# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:21-cr-74-6 |
| CHAZTON HARRIS, | Judge Jeffery P. Hopkins |
| *Defendant*. | |

## ORDER DENYING DEFENDANT CHAZTON HARRIS'S MOTION TO SUPPRESS (DOC. 84)

Before the Court is the motion to suppress and request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), filed by Defendant Chazton Harris (Doc. 84) (the "Motion")[1] and the opposition thereto (Doc. 96) filed by the United States. Defendant filed a reply (Doc. 97) and, with leave of the Court to do so, the United States filed a sur-reply (Doc. 99). For the reasons stated below, the Motion is **DENIED**.

**A.  Background**

Defendant Harris is one of six individuals indicted by a grand jury on charges of conspiring to distribute controlled substances, selling counterfeit drugs, and conspiring to launder money. Doc. 1. All six co-defendants are alleged to be involved in a drug trafficking organization called *Loverbois*, which markets and sells controlled substances, including

---

[1] Defendant's exhibits in support of the Motion were filed under seal. Doc. 89. Defendant's initial request to file exhibits under seal was conditionally granted by Judge McFarland, provided that Defendant file an amended motion consistent with *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016). Docs. 85, 88. Defendant's amended motion for leave to file under seal was timely filed along with the exhibits.

methamphetamine, on the dark web[2] for distribution throughout the United States, including the Southern District of Ohio. *Loverbois* sells drugs in exchange for virtual currency, or bitcoin (BTC), through multiple platforms on the dark web, including Empire, an online marketplace, and Wickr, an instant messaging program. Law enforcement agencies in the Southern District of Ohio and Houston have been jointly investigating *Loverbois* since 2018. Doc. 89 at PageID 989–90.

1.  **The Search Warrant Affidavit**

On August 7, 2020, law enforcement sought two search warrants for cell-site location information[3] for two different cellular telephone numbers, both registered to Fawn Painter, Defendant's girlfriend: one ending in -6829 (the "Painter Phone") and the other ending in -8602 (the "Harris Phone"). FBI Special Agent Rhett Close executed an affidavit in support of each warrant. Doc. 89, Ex. A (affidavit for the Painter Phone) & Ex. B (affidavit for the Harris Phone (the "Affidavit")). In addition to his more than three years with the FBI, Special Agent Close spent 11 years as a police officer investigating crimes that included narcotics trafficking and money laundering. Aff., Doc. 89 at PageID 987–88. Special Agent Close has both training and experience in investigating criminal activity involving the use of computers and other technology. *Id.* at PageID 988–89.

---

[2] As explained in the warrant affidavits at issue here, "[t]he 'dark web' is a portion of the Deep Web of the Internet, where individuals must use an anonymizing software or application called a 'darknet' to access content and websites. Within the dark web, criminal marketplaces operate, allowing individuals to buy and sell illegal items, such as drugs, firearms, and other hazardous materials, with greater anonymity than is possible on the traditional Internet (sometimes called the 'clear web' or simply the 'web')." Doc. 89 at PageID 990, n.5.

[3] When cellular phones are used, they connect to antennas on cell towers (or "cell sites"). "Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI)," which wireless carriers collect and store. *Carpenter v. United States*, 138 S. Ct. 2206, 2211 (2018). "By tracking the cellular telephone electronic signals between a cellular telephone and the cell towers it relies on and communicates with, an individual's location can be determined, finitely identified, and tracked through surveillance." Doc. 89 at PageID 994.

2

According to Special Agent Close's Affidavit, between June and November 2018, inspectors from the United States Postal Inspection Service had identified multiple suspicious parcels being shipped across the country from Houston, Texas. *Id.* at PageID 991. During a "knock and talk," the recipient of one parcel, found to contain 50 oxycodone pills, stated that he had purchased these items from an online vendor named *KidRoxy*. *Id.* An IP address tracking several of the parcels shipped by *KidRoxy* was identified as belonging to Painter, Defendant's girlfriend with whom he cohabited at an address in Houston. Defendant was identified as a resident during a knock and talk at that address in January 2019. *Id.*

Then in March 2020, investigators conducted an undercover purchase of counterfeit Adderall from *Loverbois* for $700 worth of bitcoin. As Special Agent Close described more fully in the Affidavit for the Harris Phone:

> 17. Investigators know that marketplace vendors will routinely operate multiple vendor accounts or switch monikers in order to conceal their identities. Additionally, vendors will sell different types of narcotics from multiple accounts to confound law enforcement detection.
>
> 18. During the course of the investigation, numerous online undercover drug purchases have been made from the moniker *Loverbois*, many among which were delivered to the Southern District of Ohio. As an example, on March 7, 2020, an undercover purchase of purported counterfeit Adderall tablets (believed to contain methamphetamine) was conducted from *Lovervois* [sic] via Wickr using Wickr ID: *Loverbois* for 0.07935 BTC ($700.00). . . .
>
> 19. Analysis of the blockchain regarding the undercover purchase identified a deposit to Coinbase from the wallet address which was provided by *Loverbois* for purposes of receiving payment. Pursuant to an administrative subpoena, Coinbase identified the account holders as HARRIS and PAINTER. The [Harris Phone] was listed by HARRIS as pertinent to the account. An additional account was identified that belongs to PAINTER which listed [the Painter Phone] as pertinent to that account.

3

> 20. In July 2020, Apple responded to legal process on several Apple accounts belonging to HARRIS and PAINTER. According to Apple's response, the [Harris Phone] belongs to HARRIS. Review of documents received from Coinbase indicate the account used to receive payment for illicit drugs was accessed by the [Harris Phone]. The Coinbase return indicated that on multiple occasions between November, 2018 and December, 2019, the [Harris Phone] access was verified as to the Coinbase account belonging to HARRIS.

*Id.* at PageID 991–92.

In sum, investigators paid for their undercover drug purchase by depositing bitcoin into *Loverbois*' digital wallet (the "LB Wallet"). Investigators were then able to analyze the blockchain[4] to discover that the LB Wallet had previously deposited bitcoin into another digital account operated through the company Coinbase (the "CB Account"). Coinbase in turn identified the accountholders as Defendant and Painter, with the Harris Phone as the associated phone number. *Id.*; *see also id.* at PageID 993 (noting that the CB Account was likewise connected to a bank account labeled "Chaz and Fawn Wells Fargo"); Resp., Doc. 96, Ex. B, PageID 1052–53 (subpoena return from Coinbase). Although not set forth in the Affidavit, this transfer of bitcoin from the LB Wallet to the CB Account occurred on July 15, 2019—some eight months prior to the March 2020 drug purchase.

### 2. The Motion to Suppress

Defendant now challenges the veracity of Special Agent Close's Affidavit, arguing that it contained a false statement or material omission that would invalidate the warrant and lead

---

[4] As part of the investigation in this case, it appears that the authorities used publicly available software that permits users to search transactions on the Bitcoin blockchain, which itself is essentially a public ledger of cryptocurrency transactions. *See* Resp., Doc. 96, Ex. A, PageID 1048–50; *see also United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020) (finding defendant lacked a privacy interest in information available on the Bitcoin blockchain, noting "it is well known that each Bitcoin transaction is recorded in a publicly available blockchain"); *Friel v. Dapper Labs, Inc.*, — F. Supp. 3d —, No. 21 CIV. 5837 (VM), 2023 WL 2162747, at *2–3 (S.D.N.Y. Feb. 22, 2023) (describing blockchain technology and noting that "[i]n simplest terms, a 'blockchain' is a decentralized digital ledger used to record and validate transactions").

to the suppression of any resulting evidence. Defendant's Motion, however, does not point to a specific false statement (or omission) made in the Affidavit. Instead, it vaguely argues that the Government had not provided evidence linking the LB Wallet to the CB Account; therefore, any claim that the Harris and Painter Phones were relevant to the investigation is "seemingly false." Mot., Doc. 85 at PageID 941. Defendant accordingly requests that the Court hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), or alternatively, that the Court impose discovery sanctions against the Government.

In response, the Government asserts that it had indeed provided Defendant with the blockchain analysis linking the LB Wallet to Defendant's CB Account, and that the Motion should be denied on numerous grounds, including Defendant's failure to meet his burden justifying a hearing under *Franks v. Delaware* and his lack of standing to challenge the warrant for the Painter Phone. The Government also argues that the Motion is moot because the prosecution does not intend to use the information sought by the search warrants—the location data for the Painter and Harris Phones—at trial.

Defendant's reply in support of the Motion adds some clarity to his position. First, Defendant argues that Special Agent Close's Affidavit omitted a material fact—the date of the transaction between the LB Wallet and CB Account—to create a misleading story and fabricate probable cause. Defendant posits that the Special Agent "chose to omit [the transaction's] date in order to suggest that the alleged connection between [Defendant] and LoverBois was established after or close to the time of the controlled purchase," when in reality "[a]n isolated transaction that occurred in July of 2019 simply cannot connect someone to a transaction that occurred in March of 2020." Reply, Doc. 97 at PageID 1055–56. Second, Defendant argues that the July 2019 transaction between the LB Wallet and CB Account

5

amounts to "stale information," on which a warrant affidavit may not rely in order to establish probable cause. *Id.* at PageID 1056–58 (citing *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010)).

Given the new arguments raised in Defendant's reply, the Court granted the Government leave to file a sur-reply. *See* Doc. 98; *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 580 (S.D. Ohio 2010) (Deavers, M.J.) ("This Court has routinely found good cause exists to permit a party to file a sur-reply to address an issue raised for the first time in a reply brief."). In its sur-reply, the Government reiterates its prior arguments in the context of Defendant's new allegation of a material omission, but does not fully address Defendant's newly raised staleness argument.

**B.  Standing With Respect to the Painter Phone**

As an initial matter, the Court finds that Defendant lacks standing to challenge the warrant for the Painter Phone. As the Government sets forth in its response, there is ample authority for the proposition that a defendant lacks standing to contest the search of another person's property when the defendant has not shown ownership or a privacy interest in the property.[5] Resp., Doc. 96 at PageID 1033–35. Defendant here has not even attempted to show that he has an ownership interest or expectation of privacy in his girlfriend's phone; therefore, the Court **DENIES** the Motion with respect to the Painter Phone and will address Defendant's arguments only as they apply to the Harris Phone.

---

[5] *See, e.g., United States v. Gatson*, 744 F. App'x 97, 100 (3d Cir. 2018); *United States v. Molina*, 569 F. Supp. 3d 596, 621 (E.D. Ky. 2021); *cf. United States v. Gonzalez*, 849 F. App'x 557, 565 (6th Cir. 2021) (defendant who offered no evidence to establish "ownership, possession, and/or control" over co-defendant's vehicle had no standing to contest its search); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (defendant seeking suppression of evidence carries burden of proof).

C. *Franks v. Delaware*

"An affidavit supporting a search warrant is presumed valid." *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Accordingly, a defendant is entitled to an evidentiary hearing on the veracity of a warrant affidavit—a "*Franks* hearing"—*only if* the defendant (1) "makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and (2) "proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171–72); *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). Only when the defendant succeeds in making his preliminary showing does the Court then need to assess whether probable cause exists if the false statement is excluded—or the omitted information included. *See United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997).

The defendant's burden in making this "substantial preliminary showing" is a heavy one. *Bateman*, 945 F.3d at 1008. The defendant's challenge

> must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171. And merely proving a falsity or omission is not enough—the defendant must show the affiant *intended* it to be false or misleading. *See United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009) (finding that district court properly denied request for

*Franks* hearing when defendant "made no showing that the affiant *intended to mislead* the judge by th[e] omission" (emphasis added)); *United States v. Schimley*, No. 1:08 CR 510, 2009 WL 5171826, at *6 (N.D. Ohio Dec. 21, 2009) ("*Franks* teaches that a mere showing of falsity is insufficient to demonstrate recklessness on the part of the affiant[.]"), *aff'd,* 467 F. App'x 482 (6th Cir. 2012).

The Sixth Circuit "has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Fountain*, 643 F. App'x at 546 (quoting *United States v. Fowler,* 535 F.3d 408, 415 (6th Cir. 2008)). Omissions are "less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Atkin*, 107 F.3d at 1217 (citing *United States v. Martin,* 920 F.2d 393, 398 (6th Cir. 1990)). *Franks* hearings based on alleged omissions are thus rarely granted. *See United States v. Tate*, No. 21-3436, 2022 WL 1224552, at *4 (6th Cir. Apr. 26, 2022); *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001).

The decision of whether to hold a *Franks* hearing is "committed to the sound discretion of the district court." *Bateman*, 945 F.3d at 1008 (quoting *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)).

D.  **Entitlement to a *Franks* Hearing**

Defendant claims only one material omission from the Affidavit: the July 2019 date of the transaction between the LB Wallet and the CB Account. According to Defendant, Special Agent Close's failure to include this date—and his overall organization of the facts in the Affidavit—resulted in a "misleading chronology" intended to "fabricate probable cause." Reply, Doc. 97 at PageID 1054.

8

First, the Court does not view the organization of the Affidavit as creating a faulty or misleading chronology. Defendant takes issue with the fact that the blockchain analysis is mentioned only after discussion of the controlled buy. But as the Government points out in its sur-reply, investigators could not have conducted the blockchain analysis with respect to the LB Wallet until *after* they had been given the details of the LB Wallet during the March 2020 controlled buy. And it was that analysis that revealed the prior deposit of bitcoin from the LB Wallet into Defendant's CB Account. The Affidavit therefore appears to just be organized chronologically.

More importantly, there is barely a suggestion—and certainly no offer of proof as required by *Franks* and its progeny—that Special Agent Close *intended* to mislead the magistrate judge by omitting the date of the transaction. Defendant has instead gone from asserting in the Motion that the transaction between the LB Wallet and the CB Account "caused some type of confusion or ambiguity among the investigators," Doc. 84 at PageID 939, to positing in his reply that Special Agent Close "likely knew that the July 2019 transaction was stale and chose to omit it," Doc. 97 at PageID 1056. The Court finds Defendant's allegations to be insufficient to meet the required "substantial preliminary showing" that Special Agent Close knowingly or recklessly made a material omission in the Affidavit, and Defendant is thus not entitled to a *Franks* hearing.

Finally, even if Defendant *had* met his threshold burden of showing that Special Agent Close intended to mislead the magistrate judge, he has not carried his burden of proving that the omission was necessary to the finding of probable cause. Defendant essentially asks the Court to ignore the transaction between the LB Wallet and Defendant's CB Account entirely—that is, exclude the allegedly "tainted" information altogether. But when the issue

9

is one of a material omission, the proper inquiry is whether probable cause exists if the omission were *included* in the affidavit. *See Fowler*, 535 F.3d at 415 (holding that, "[i]n the case of alleged material omissions," the second prong of the *Franks* test is that "a finding of probable cause would not be supported by the affidavit *if the omitted material were considered to be a part of it*" (emphasis added)); *United States v. Wilson*, 501 F. App'x 416, 421 (6th Cir. 2012) ("[T]he law requires both redaction of false statements from the affidavit and *consideration of material omitted* from the affidavit in order to determine whether there was probable cause for a search warrant." (emphasis added)).

The Court finds that, even if the warrant had included the July 2019 date of the deposit from the LB Wallet into Defendant's CB Account, probable cause would have existed. Defendant was not only living at an address that was tracking multiple drug shipments, but his name and phone number were tied to an account that had received funds from an account that was discovered—albeit some eight months after the deposit—to be the seller of illegal drugs. "Time and again the Supreme Court has emphasized that 'probable cause is not a high bar' to clear." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018)) (cleaned up). The facts set forth in the Affidavit as a whole lead the Court to conclude that probable cause existed to believe that the location information of the Harris Phone would lead to evidence of illegal narcotics trafficking. *See United States v. Hines*, 885 F.3d 919 (6th Cir. 2018) (courts must review warrant affidavits using a totality-of-the-circumstances approach).

### E.   Stale Information

In a last-ditch effort to get the warrant thrown out, Defendant argues in his reply brief that the July 2019 transaction between Defendant's CB Account and the LB Wallet was

"stale" information, which cannot be used to establish probable cause. Ordinarily, an argument raised for the first time in a reply brief is waived because the nonmoving party has no opportunity to respond. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). But because the Government was given (and took) the opportunity to file a sur-reply—even if that sur-reply did not more than tangentially address the staleness argument—the Court will address it here.

Whether information is stale in the context of a search warrant turns on several factors, such as:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
>
> (2) the criminal (nomadic or entrenched?),
>
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006)). Because probable cause is concerned with the present, "the critical question is whether the information contained in the affidavit, when presented to the . . . judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Abboud*, 438 F.3d at 572 (quoting *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir. 1998)) (alterations in original).

The Court finds that the July 2019 transaction is not stale information. First, as Defendant acknowledges in his reply brief, drug *trafficking* is typically considered to be an ongoing offense, which weighs against staleness. *See United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015); *see also United States v. Ombisi*, No. 221CR20011MSNCGC, 2022 WL

11

3701176, at *5 (W.D. Tenn. Aug. 26, 2022) ("[T]he nature of the crime is an ongoing narcotics distribution conspiracy that renders the passage of time less significant." (quotation marks omitted)). Indeed, law enforcement had been investigating the *Loverbois* drug-trafficking organization for over two years by the time the warrant was requested and issued. And the July 2019 transaction was not the first piece of evidence to suggest that Defendant might be involved: Defendant lived at an address that had been discovered to be tracking drug shipments out of Houston in the several months prior. Second, there is no indication that the suspected criminals were nomadic; instead, the number of drug shipments originating in Houston, Texas "certainly suggest[s] the criminals were more stationary than nomadic." *Ombisi*, 2022 WL 3701176, at *6 ("[T]hat 'all of these drugs were purchased without prescriptions and were delivered via USPS, entering the mail stream in the San Antonio, TX-area,' certainly suggests the criminals were more stationary than nomadic.").

Third, Defendant's argument that location data is "fleeting" and thus the Harris Phone's location "in August 2020 [when the warrant was issued] was irrelevant to the investigation" is not well taken. Location data is not like drugs that are consumed quickly; it is an electronic record of the phone's—and therefore its user's—movement. *Cf. United States v. Scott*, No. 2:17-CR-20489-TGB, 2018 WL 2197911, at *7 (E.D. Mich. May 14, 2018) (rejecting defendant's argument regarding perishability of evidence in a drug case when the warrant at issue sought records which "are of a more permanent nature, and are not as transient as drugs"). So even though a phone's or person's location itself might be "fleeting," that doesn't make it so for the record of those locations. The fourth factor—the place to be searched—seems less relevant in the context of cellular location data, but the Court finds it nonetheless weighs against staleness here. The Harris Phone had been used to access the CB

Account, which was held in Defendant's name, on "multiple occasions between November 2018 and December 2019." Doc. 89 at PageID 992. Information from Apple likewise tied the Harris Phone to Defendant in July 2020, shortly before the warrant was requested and issued. *Id.* The Harris Phone therefore appears to have been more than a short-term burner phone. In sum, the Court finds reason to believe that, despite the age of the July 2019 transaction, "there was a fair probability that [evidence of drug trafficking] would still be found" by obtaining the location data for the Harris Phone.

**F.    Conclusion**

For the reasons stated above, the Court finds (1) that Defendant Harris has not made a "substantial preliminary showing" that Special Agent Close knowingly, intentionally, or recklessly included a material omission in the Affidavit, and (2) that the warrant did not rely on stale information. Defendant's Motion to Suppress and request for a *Franks* hearing is accordingly **DENIED**.

**IT IS SO ORDERED.**

Dated:  May 15, 2023

Hon. Jeffery P. Hopkins
United States District Judge